## SHILLABER *v.* ROBINSON.

1. A deed of land, with a power of sale, to secure the payment of a debt, whether made to the creditor or a third person, is, in equity, a mortgage, if there is left a right to redeem on payment of such debt.

2. Sales under such a power have no validity unless made in strict conformity to the prescribed directions. Therefore, a sale made on a notice of six weeks, instead of twelve, as required by the mortgage and the statute of the State where the lands are situate, is absolutely void, and does not divest the right of redemption.

3. A person holding the strict legal title, with no other right than a lien for a given sum, who sells the land to innocent purchasers, must account to the owners of the equity of redemption for all he receives beyond that sum.

APPEAL from the Circuit Court of the United States for the Eastern District of New York.

The original transaction, which gave rise to the present suit, was a sale by John Shillaber of about three thousand acres of land, in the State of Illinois, to John Robinson, the appellee. The contract was evidenced by a written agreement, by which it appears that Robinson, in part payment of the Illinois land, was to convey to Shillaber three different parcels of land, lying in the State of New York, — one in Kings, one in Sullivan, and one in Essex, County.

On this contract, a suit, in the nature of a bill for specific performance, was brought, in the Circuit Court of Ogle County, Illinois, by Robinson against Shillaber. The latter having subsequently died, his sole heir, Theodore Shillaber, was sub stituted as defendant. The suit resulted in a decree which, among other things, established an indebtedness of Shillaber to Robinson, on final accounting, of $4,249.58; and ordered that, on the payment of this sum, Robinson should convey to Shillaber the lands in New York, already mentioned. In order that the whole matter should be finally disposed of, the decree then ordered that Robinson and wife should make and deposit with the clerk of the court a good and sufficient conveyance for said lands, as an escrow, to be delivered to Shillaber on his payment of the sum aforesaid within ninety days. It further provided that, if the money was not paid by Shillaber within that time, Robinson should convey the lands, in trust, to Silas Noble, who " should proceed to sell the same, in such manner, and after giving such reasonable notice of the time and place of such sale, as might be usual or provided by law in the State of New York ; " and out of the proceeds pay the expenses of the trust and the money due Robinson, with interest, and hold the remainder, if any, subject to the order of the court.

Shillaber did not pay the money as ordered by the decree. Robinson then made the deed of trust to Noble, in strict accordance with the terms of the decree; and Noble, after giving notice of sale, by publication once a week for six weeks successively in the " Brooklyn Standard," sold, at public auction, on the sixteenth day of March, 1861, the lands to John A. Robinson, for the sum of $1,950, and made to him a conveyance of

the same. Said John A. Robinson purchased the lands for the benefit of John Robinson. Neither the deed from John Robinson to Noble, nor that from the latter to John A. Robinson, was placed upon record.

Since that time, and before the commencement of the present suit, John Robinson sold all these lands to divers and sundry individuals, for sums amounting in the aggregate to $9,628.

The present suit was commenced in November, 1870, in the Circuit Court for the Eastern District of New York, by Theodore Shillaber against John Robinson, requiring him to account for the value of the New York lands, on the ground that he had never acquired any other title to them than that which he held when the decree of the Illinois court was made, and that, since the purchasers from him were innocent purchasers, without notice of Shillaber's rights, their title was perfect, and Robinson was liable to him on a final settlement for the value of the lands, less the sum which Shillaber owed him, as ascertained by the decree in the Illinois court.

The court, on hearing, dismissed the bill; whereupon Shillaber appealed here,

The provisions of the New York Revised Statutes, regarding notice, are as follows:—

"SECT. 3. Notice that such mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, shall be given as follows:—

"(1.) By publishing the same for twelve weeks successively, at least once in each week, in a newspaper printed in the county where the premises intended to be sold shall be situated, or, if such premises shall be situated in two or more counties, in a newspaper printed in either of them.

"(2.) By affixing a copy of such notice, at least twelve weeks prior to the time therein specified for the sale, on the outward door of the building where the county courts are directed to be held, in the county where the premises are situated; or, if there be two or more such buildings, then on the outward door of that which shall be nearest the premises. And by delivering a copy of such notice, at least twelve weeks prior to the time therein specified for the sale, to the clerk of the county in which the mortgaged premises are situated, who shall immediately affix the same in a book prepared and kept by him for that purpose; and who shall also enter in said

book, at the bottom of such notice, the time of receiving and affix-
ing the same, duly subscribed by said clerk, and shall index such
notice to the name of the mortgagor; for which service the clerk
shall be entitled to a fee of twenty-five cents.

" (3.) By serving a copy of such notice, at least fourteen days
prior to the time therein specified for the sale, upon the mortgagor
or his personal representatives, and upon the subsequent grantees
and mortgagees of the premises, whose conveyance and mortgage
shall be upon record at the time of the first publication of the no-
tice, and upon all persons having a lien by or under a judgment or
decree upon the mortgaged premises, subsequent to such mortgage,
personally, or by leaving the same at their dwelling-house in charge
of some person of suitable age, or by serving a copy of such notice
upon said persons at least twenty-eight days prior to the time
therein specified for the sale, by depositing the same in the post-
office, properly folded, and directed to the said persons at their
respective places of residence."

*Mr. Michael H. Cardozo* for the appellant.

Robinson must account, as trustee, for all the money which
he received on the sales of the New York land, together with
interest thereon, from the respective times at which they were
made.

The decree of the Illinois court stated an account between
the parties then before it, and charged Shillaber with the full
contract price of the New York lands. This constituted a pay-
ment, and passed the equitable title to him, leaving the bare
legal title in Robinson, he holding the lands in trust for the
complainant. Hill, Trustees, p. 171; Bispham, Principles of
Equity, sects. 95, 364.

That decree changed the *status* of each of the several parties,
and from it all their rights and liabilities arise. By it, specific
performance was enforced; the Illinois lands were transferred
directly to Robinson, and the New York lands to Shillaber;
and this, though the court had no jurisdiction over the subject-
matter, provided it had jurisdiction of the person. *Massey* v.
*Watts*, 6 Cranch, 148; *Northern Indiana Railroad Co.* v. *Michi-
gan Central Railroad Co.*, 15 How. 233; *Brown* v. *Desmond*,
100 Mass. 267; *Penn* v. *Lord Baltimore*, 1 Ves. 444; Fry,
Specific Performance, sect. 63; *Pennoyer* v. *Neff*, 95 U. S. 353.

A court of equity of competent jurisdiction can adjust the

equities of the parties before it, and, in accordance with a familiar principle, it regards that which is agreed to be done as already performed. Story, Eq. Jur., sect. 64; Hill, Trustees, *supra;* Francis's Maxims, 13; 1 Fonb. Eq., bk. 1, c. 6, sect. 9.

The court, in so adjusting the equities, adjudged that Robinson should not be required to convey the New York lands to Shillaber, without some security or lien thereon for the payment to him of the balance found due by the decree.

The general intention was to constitute Robinson a mortgagee, and Shillaber a mortgagor, of the lands in question; and it is a leading maxim of construction, that the intention of the parties is the controlling element. *Mitchell* v. *Tilghman,* 19 Wall. 387, 395; *Shays* v. *Norton,* 48 Ill. 100.

The terms "trust-deed" and "mortgage" are used in Illinois and other Western States, if not synonymously, at least interchangeably. *Hoffman* v. *Mackall,* 5 Ohio St. 124; *Ingle* v. *Culbertson,* 43 Iowa, 265; *McQuie* v. *Peay,* 58 Mo. 56; Adams & Durham's Real Estate Statutes and Decisions of Illinois, 202, 1702; *Pardee* v. *Lindley,* 31 Ill. 174; *Wilson* v. *McDowall,* 78 id. 514.

The distinction is, at most, a technicality. *Wilkins* v. *Wright,* 6 McLean, 340. It is laid down by more than one authority of weight that a "deed of trust in the nature of a mortgage" is, in legal effect, the same as a "mortgage." Jones, Mortgages, sects. 60, 62, 1769; Southern Law Review, N. S. vol. iii. p. 712; *Hoffman* v. *Mackall, supra; Woodruff* v. *Robb,* 19 Ohio, 212; *Coe* v. *Johnson,* 18 Ind. 218; *Coe* v. *McBrown,* 22 id. 252; *Newman* v. *Samuels,* 17 Iowa, 528; *Ingle* v. *Cuthbertson,* 43 id. 265; *Sargent* v. *Howe,* 21 Ill. 148; *Eaton* v. *Whiting,* 3 Pick. (Mass.) 484; *Lenox* v. *Reed,* 12 Kans. 223; *Turner* v. *Watkins,* 31 Ark. 429; *In re Bondholders of York & Cumberland Railway,* 50 Me. 552; *Palmer* v. *Gurnsey,* 7 Wend. (N. Y.) 248; *Lawrence* v. *Farmers' Loan & Trust Co.,* 13 N. Y. 200; *Corpman* v. *Baccastow,* Sup. Ct. of Penn. 1877, 5 N. Y. Weekly Digest, 204; Dillon, J., in 2 Am. Law Reg. N. S. 648.

In equity, any deed, although an absolute conveyance in terms, if it be devised for the purpose of securing the payment of money, is a mortgage. *Hughes* v. *Edwards,* 9 Wheat. 489;

*Conway s Ex'rs* v. *Alexander,* 7 Cranch, 218; *Villa* v. *Rodriguez,* 12 Wall. 323; *Flagg* v. *Mann,* 2 Sumn. 486; Coote, Law of Mortgages, p. 11; Story, Eq. Jur., sect. 1018. Doubtful instruments are so construed. *Bright* v. *Wagle,* 3 Dana (Ky.), 252; *Edrington* v. *Harper,* 3 J. J. Marsh. (Ky.) 354; *Conway's Ex'rs* v. *Alexander, supra; Holmes* v. *Grant,* 8 Paige (N. Y.), Ch. 243; *Horn* v. *Keteltas,* 46 N. Y. 605.

There are, under the laws of New York, three methods of foreclosing a mortgage. Since the judicial proceedings in Illinois demand that the "trust-deed" be construed as such an instrument, either one of these methods must be adopted for that purpose, or the equity of redemption remains. They are: by the decree of a competent court; or by the proceedings prescribed in pt. iii. c. 8, tit. 15, of the New York Revised Statutes, commonly called foreclosure by advertisement; or by lapse of time, as by the failure of the mortgagor to enforce his remedy against a mortgagee in possession for more than twenty years, by analogy to the Statute of Limitations. *Hughes* v. *Edwards,* 9 Wheat. 489; *Demarest* v. *Wynkoop,* 3 Johns. (N. Y.) Ch. 129; *Lawrence* v. *Farmers' Loan & Trust Co.,* 13 N. Y. 200.

It is not pretended by Robinson that proceedings in conformity with any of these requirements were taken to foreclose Shillaber's equity of redemption.

Noble was, by the provisions of the decree and deed, directed to give such reasonable notice as is usual or provided by law in New York. "Usual" must be regarded as identical with "provided by law."

"Or" has the same meaning as "and," when such a construction is necessary to effectuate the intention of the parties. Maxwell on the Interpretation of Statutes, 216; Potter's Dwarris on Statutes and Constructions, 286, 292; *Fowler* v. *Padget,* 7 T. R. 509; *Roome* v. *Phillips,* 24 N. Y. 463, *Arnold* v. *Buffum,* 2 Mas. 208.

Trustees are bound to comply strictly with the requirements of the instrument originating and defining their power and authority. 1 Hilliard, Mortgages, 143; Hill, Trustees, 474; *Thornton* v. *Boynton,* 31 Ill. 200; *Hull* v. *Towne,* 45 id. 493; *Griffin* v. *Marine Co.,* 52 id. 130; *Strother* v. *Law,* 54 id. 413; *Jencks* v. *Alexander,* 11 Paige (N. Y.), Ch. 619; *Tarascon*

v. *Ormsby*, 3 Litt. (Ky.) 404; *Wallis* v. *Thornton*, 2 Brock. 422; *Gray* v. *Shaw*, 14 Mo. 341; *Smith* v. *Proven*, 4 Allen (Mass.), 516; *Roche* v. *Farnsworth*, 106 Mass. 509.

Courts of equity are adverse to, and have ever been suspicious of, sales under a power in mortgages or trust-deeds, without notice to the mortgagor; and special requirements of notice in the deed itself, or the instrument originating the trust, have been enforced with the utmost rigor. *Anonymous*, 6 Madd. Ch. 10; *Gill* v. *Newton*, 12 Jur. N. s. 220; *Major* v. *Ward*, 5 Hare, 598; *Longwith* v. *Butler*, 3 Gilm. (Ill.) 32; *Tarascon* v. *Ormsby*, 3 Litt. (Ky.) 404; *Flower* v. *Elwood*, 66 Ill. 438; *Bigler* v. *Waller*, 14 Wall. 297; Jones, Mortgages, sect. 1822.

It is not necessary to make out a case of fraudulent connivance between Noble and the defendant, in order to entitle the appellant to the account which he desires. The appellee is a mortgagee in possession of the lands, and, as a trustee for the complainant, is bound to take the greatest care of the interests of the latter. When called on for an accounting, he must show that he has faithfully performed the duties of a trustee, in relation to the property. Story, Eq. Jur., sect. 1016; *Bigler* v. *Waller*, 14 Wall. 297; *Russell* v. *Southard*, 12 How. 139.

Had Robinson not sold and conveyed the property to innocent purchasers, Shillaber, on paying Robinson the amount due under the decree of the Illinois court, would have an unquestionable right to the lands.

Even if the deed made by Robinson to Noble be regarded as creating an express trust, under the New York Statutes, for the sale of land, Robinson, in the absence of an express permission by the instrument originating the alleged trust, could not, under the circumstances of this case, acquire title by such a sale, directly or indirectly. *Fulton* v. *Whitney*, 66 N. Y. 548; *Blake* v. *Buffalo Creek Railroad Co.*, 56 N. Y. 485; *Case* v. *Carroll*, 35 N. Y. 385; *Gardner* v. *Ogden*, 22 id. 327; *Colburn* v. *Morton*, 3 Keyes, 296; *Conger* v. *Ring*, 11 Barb. (N. Y.) 356; *Van Epps* v. *Van Epps*, 9 Paige (N. Y.), Ch. 237; *Davoue* v. *Fanning*, 2 Johns. (N. Y.) Ch. 252; *Bergen* v. *Bennett*, 1 Cai. (N. Y.) Cas. 11, 13, 20; *Michoud* v. *Girod*, 4 How. 503; *Ringo* v. *Binns*, 10 Pet. 269; *Lockett* v. *Hill*, 1 Wood, 552; *Dexter* v.

*Shepard*, 117 Mass. 480; *Dyer* v. *Shurtleff*, 112 id. 165; *Montague* v. *Dawes*, 12 Allen (Mass.), 397; s. c. 14 id. 369; *Benham* v. *Rowe*, 2 Cal. 386; *Parmenter* v. *Walker*, 9 R. I. 225; *Ex parte Bennett*, 10 Ves. 381; *Coles* v. *Trecothick*, 9 id. 234; *Ex parte Hughes*, 6 id. 617; 2 Washburn, Real Prop. 79; Sugden, Vendors and Purchasers, c. 20, sect. 2, par. 1.

This rule embraces trustees, mortgagees, and all other persons sustaining a fiduciary relation, their agents or assignees. Hill, Trustees, 159, 160; *Mapps* v. *Sharp*, 32 Ill. 13; *Waite* v. *Dennison*, 51 id. 319.

Although the courts have, in a few cases (*Coles* v. *Trecothick*, 9 Ves. 234; *Howard* v. *Davis*, 6 Tex. 174), held that sales so made were valid, it was only when a marked spirit of fairness pervaded the entire transaction, and due care was taken to preserve the rights of all interested; and so careful are they to guard safely the interest of beneficiaries, that wherever any attempt to act unfairly, to stifle competition, or in any manner to take undue advantage of the fiduciary has been made, such sales have been set aside, provided innocent third parties would not suffer thereby. *Longwith* v. *Butler*, 3 Gilm. (Va.) 32; *Griffin* v. *Marine Company*, 52 Ill. 130; *Flower* v. *Elwood*, 66 id. 436; Sugden, Vendors and Purchasers, c. 20, sect. 2, par. 1.

*Mr. Philip S. Crooke* and *Mr. John H. Bergen*, *contra*.

The trust-deed to Noble of the property created a valid trust, under the statutes of New York (*Corse* v. *Leggett*, 25 Barb. 389; *Sedgwick* v. *Stanton*, 20 id. 473; 2 Rev. Stat. N. Y. 355, sub. 1 & 2, vol. i., Edmund's ed. p. 677 ), which allow an express trust, 1, to sell lands for the benefit of creditors; and, 2, to sell, mortgage, or lease lands, for the benefit of legatees, or for the purpose of satisfying any charge thereon.

Robinson was a creditor of Shillaber under the decree of the Illinois court; and the amount due was made a charge and lien on the property, which was sold by Noble to John A. Robinson for the appellee, and not to the appellee; although the latter, not occupying any fiduciary relation either to Noble or Shillaber, had a perfect right to purchase. The authorities cited by the appellant in support of his position, that the appellee could not acquire a title at Noble's sale, are all instances

where a trustee was the purchaser of the trust property, and have, therefore, no bearing upon this case.

Reference to the statutes of Illinois is not necessary, although this was a valid trust in that State (Stats. of Illinois, Cross, 3d ed., 1869, vol. i. p. 84, sect. 3); for it is a well-settled principle that the law of the State where the land lies determines the construction of instruments affecting it. As the trust-deed covered lands in New York, and was by its terms to be there performed, the law of that State must govern it. *Smith* v. *Smith,* 2 Johns. (N. Y.) 235; *Thompson* v. *Ketcham,* 4 id. 285; *Hyde* v. *Goodnow,* 3 N. Y. 266; *Bowen* v. *Newell,* 13 id. 290; 10 id. 436; 33 id. 615. It vested the fee of the land in the trustee, subject to the trust (*Noyes* v. *Blakeman,* 6 N. Y. 578); and where the trust was executed by his sale of the land, either with or without notice, a valid and unincumbered title passed to the purchaser. *Belmont* v. *O'Brien,* 12 N. Y. 405.

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

The principal, in fact the only, defence which merits any consideration in this case, is that by the trust-deed which Robinson made to Noble under the decree of the court, and by the sale which Noble made in conformity to the terms of the decree, and of that deed, Shillaber's rights were completely divested in the land; and since it did not bring, at that sale, as much money as was due to Robinson, which, by the terms of both the decree and the deed of trust, was to be paid to him out of the proceeds of that sale, nothing was left for Shillaber in the matter.

The decree in the Illinois suit, in which Theodore Shillaber had appeared after his father's death, is binding and conclusive on both parties. The deed of trust made by Robinson to Noble is in accordance with the decree, and conferred an authority on him to sell the land. The purpose of this sale, as expressed in the deed of trust and the decree, was to pay to Robinson the $4,249.58, which was a first lien on the land, and the balance into the court, for the use of Shillaber.

Much discussion has been had in the case as to the nature of the conveyance to Noble, one party insisting that it is a simple

mortgage with power of sale, and the other that it is, under the statutes of New York, the creation of a valid trust in lands. The point of this discussion is found in the question, whether the sale by Noble, under that instrument, was valid or was void. The counsel of defendant insists that Noble became vested with a perfect title to the land by the deed of Robinson, and that his sale and conveyance are valid whether he pursued the direction of the deed in regard to advertising or not; and that, if any such advertising were necessary, there was no usual notice, nor any provided by law, for such sales in the State of New York.

It is shown by the evidence that Noble did publish a notice that the three pieces of land in the three different counties would be sold on a day mentioned, at Montague Hall, in the city of Brooklyn. This notice was published, for six weeks preceding the day appointed for the sale, in the "Brooklyn Standard," a weekly paper printed in Kings County. But the statutes of New York, then in force, prescribed publication of such notice for twelve weeks successively before the sale.

If the instrument under which Noble acted is a mortgage with power of sale, it is beyond dispute that the sale is void, because it was not made in conformity with the terms on which alone he was authorized to sell. That the sale, under such circumstances, is void, is too well established to admit of controversy. We refer specially to the recent case in this court of *Bigler* v. *Waller*, 14 Wall. 302. The list of authorities cited by the appellant are to the same effect.

Without entering into the argument of the question whether the instrument under which Noble acted is in all respects a mortgage, the case of *Lawrence* v. *The Farmers' Loan & Trust Co.* (13 N. Y. 200), shows that it is an instrument which, for the purposes of the sale under the power which it contains, comes under the provisions of the statute we have cited as regards publication of notice. It also decides that a sale made without such notice is void. It is the well-settled doctrine of courts of equity, that a conveyance of land, for the purpose of securing payment of a sum of money, is a mortgage, if it leaves a right to redeem upon payment of the debt. If there is no power of sale, the equity of redemption remains until it is foreclosed by

a suit in chancery, or by some other mode recognized by law. If there is a power of sale, whether in the creditor or in some third person to whom the conveyance is made for that purpose, it is still in effect a mortgage, though in form a deed of trust, and may be foreclosed by sale in pursuance of the terms in which the power is conferred, or by suit in chancery. These instruments generally give specific directions regarding the notice to be given, and of the time, place, and terms of the sale. In some States, the statute prescribes the manner of giving this notice, and in such case it must be complied with. In either case, the validity of the sale being wholly dependent on the power conferred by the instrument, a strict compliance with its terms is essential.

If this is not a mortgage to which the notice of the New York statute is applicable, we do not see that the defendant's position is improved by that circumstance; for there is, then, no provision for a sale or foreclosure of the equity of Shillaber, but by a decree of an equity court. This has never been had, and it still remains that there has been no valid execution of the trust reposed in Noble by the deed. If the matter had remained in this condition, Shillaber would, on payment to Robinson of the $4,249.58, with interest, have had a right, enforceable in this suit, to have a conveyance of the New York land by Noble to him. But neither the conveyance by Robinson, which remained an escrow, nor that to Noble, was ever placed on record; and Robinson, in whom, according to the records of the proper counties in New York, the title still remained, sold all these lands to persons who, as innocent purchasers for a valuable consideration, now hold them by a good title. This title is equally beyond the reach of Robinson, of Shillaber, and of the court. Indeed, although Robinson alleges in his answer that the purchase of John A. Robinson was made for his benefit, he seems to have attached no importance to it; for he does not aver that John A. Robinson ever conveyed to him, nor does he, while giving copies of all the deeds on which he relies, including the deed to John A. Robinson, show any evidence of a conveyance from John A. Robinson to him.

The defendant, therefore, when he sold and conveyed this land to the parties who now hold it under him, did it in viola-

tion of the rights of Shillaber, as settled by the Illinois decree. By that decree, Robinson had no right to sell. By the conveyance made to Noble under that decree, he had nothing left in the New York lands but a lien for his $4,249.58. The sale by Noble was void, and conferred no rights on Robinson whatever. His belief in its validity did not change the matter. By availing himself of the title which was in him originally, and which appeared by the records to be there yet, he sold the lands for twice as much as his lien, and received the money. That he must account to Shillaber in some way is too plain for argument. If Shillaber could, by paying his debt to Robinson, redeem the lands from their present holders, it is the relief which he would prefer, and to which as against Robinson he would be entitled. But Robinson has put this out of his power, by a wrongful sale and conveyance to innocent purchasers.

There is no evidence to show that the lands are now worth any more than Robinson sold them for; no evidence that they were worth more when he sold them. His answer gives the precise sum received by him for each parcel of land, and the date when he received it. He probably believed the land was his own when he sold it; but, as we have seen, he must be considered as holding such title as he had in trust, first for his own debt due from Shillaber, and the remainder for the use of Shillaber. Treating him, then, as trustee, he must account for the money received for the lands, according to the trusts on which he held them. The decree of the Circuit Court dismissing Shillaber's bill must be reversed, and the case remanded to that court, with instructions to render a decree on the basis of charging Robinson with the sums received by him for the lands, and interest thereon until the day of the decree, deducting therefrom the sum found due him from Shillaber by the Illinois decree, with interest to the same time, and rendering a decree for the difference in favor of Shillaber against Robinson, with costs; and it is

*So ordered.*