NASH, J.
It appears from the testimony and pleading in this case, that John S. Norman, on the 24th day of September, 1846, executed to John W. George, a deed conveying a tract of land in the county of Culpeper containing five hundred and thirty-five acres in trust to secure the payment of $600, due from the said Newman to Thomas Hill, jr. by bond, dated the same day, and payable twelve months after date, with power to the trustee to sell the same for cash, upon the premises, upon default of payment, after advertising the time and place of sale for one month.
And on the 26th day of October, 1846, the said Norman executed another deed, conveying the same land to Thomas Hill, jr. in trust to secure the payment of a bond for $440, executed by thé said Norman to James H. Vowles on the same day, (which was transferred-'to William,..A. Hill,) and upon default of payment, the trustee was authorized to sell the land at Culpeper Courthouse, for cash, after advertising the time and place of sale for thirty days at Stevensburg and Culpeper Courthouse.
And on the 17th day of March, 1847, the said Norman executed a third deed to Coleby Cowherd, conveying the said tract of land, together with his interest in a house and lot in Stevensburg, and certain slaves, in trust to secure, first, to William A. Hill (who had become the holder of the two bonds, secured by the two previous deeds) for $1,040 with *907 interest thereon ; and to Thomas Hill, jr. the sum of $380 with interest from *the ISth day of January, 1847 ; and lastly, to secure certain other enumerated creditors. By the terms of this last deed, the said Norman was to remain in the possession of the property, until the trustee was required by any one of the creditors to make sale. And when so required, he was to sell the property in the town of Stevens-burg', before the front door of the storehouse, of Nalle and Ashby, to the highest bidder, for one half cash, and the other half upon a credit of six months; after advertising the tract of land and the house and lot in Stevensburg for at least twenty days, at Culpeper Courthouse, Stevensburg and Raccoon Ford. That on the 20th day of April, 1847, before the bond secured by the first deed, became payable, Coleby Cowherd the trustee, (who appears to have been a youth under twenty-one years of age, and the nephew and deputy of Thomas Hill, jr.,) sold under the last named deed, the tract of land and the house and lot at public auction, in the town of Stevensburg, before the front door of Nally and Ashby’s storehouse, for cash, at which sale Thomas Hill, jr. became the purchaser of the house and lot for $33, and of the tract of land for $1,150, and on the 17th day of May, 1847, the said Cowherd executed a deed conveying the said tract of land to Thomas Hill, jr., and upon the face of said deed recites that the same had been sold by him for cash.
The plaintiff filed his bill in the Circuit Court of Culpeper, impeaching the said deeds of trust, so far as the debts secured thereby to Thomas Hill, jr. and William A. Hill were concerned, on the ground that these debts were founded upon usurious contracts, made with the said Thomas Hill, jr. who was then acting as deputy sheriff for said county, to raise money to pay off a number of executions which the said Hill then had in his hands against him ; and to set aside the sale made under the last named deed of trust, on the ground that the house and lot and the tract of land had been sold by the trustee for a grossly inadequate *price, and for misconduct in the trustee in conducting the sale, and for selling the said property without complying with the terms of the deed. After the subpoena was issued, and before the bill was filed, Norman was taken in execution under a ca. sa. and took the oath of insolvency, surrendering in his schedule, his interest in the land in controversy, of which Thomas Hill, jr. became the purchaser at the price of $21.
The bill contains a detailed statement of the circumstances under which the said debts were contracted, and also a charge that “ whether the said sale was advertised by the said trustee in the manner required by the deed of trust or not, he did not know ; but if it was, he charges that the said trustee purposely conducted the business in such a manner as to prevent competition, with a view that the said Hill might purchase all the property at his own price.” Neither William A. Hill nor the trustee answered the bill, and the same was taken for confessed as to them. But Thomas Hill, jr. does answer, and denies the usury charged in the bill. And in regard to the sale, he says, “ the sale was duly advertised, and the property fairly sold.” On the hearing the bill was dismissed.
Without going into any detailed statement of the circumstances attending the origin of the debts secured in the two first deeds, I deem it sufficient to remark that I have given the statements in the pleadings, and the facts proved by the depositions of James H. Vowles and Edward R. Hill, a careful examination, and although the circumstances attending the creation of those debts are sufficient to create a strong suspicion that they were founded in usury, yet I do not think the proofs are sufficiently strong and convincing to outweigh the answer of the defendant and to establish the fact. In regard to the debt of $380 secured by the last deed, I do not think there is any proof to impeach it.
The question, however, as it respects the regularity and validity of the sale, is one of a graver and much more serious character. But, before considering that. *question, I deem it not improper to notice the argument of one of the counsel for the appellee, who again brought under review, the question in regard to the weight and effect of an answer in chancery responsive to the bill, decided by this court at the present term in the case of Roberts v. Kelly. It is not my purpose to re-open the argument of the question then decided, because the reasons for that opinion were then fully expressed ; but only to say, that after the best reflection which I have been able to give to the subject, aided, too, as we certainly have been, by the diligent researches of the learned counsel, who discussed the subject, I have not seen any reason to change my opinion.
In regard to the sale which was made under the last deed of ^ trust by Coleby Cowherd, the trustee therein named, the sale has been impeached by the plaintiff upon two grounds ; first, the irregularity of the sale, in failing to advertise the time and place of making it. And also upon the ground of the 'gross inadequacy pf the price at which the property was sold. And a further objection was taken in the argument of the cause, that it appeared from the exhibits filed in the case, that the sale was made for cash, instead of being made upon a credit of one-half for cash, and the other half upon a credit of six months.
In regard to the first objection, I think it may be safely affirmed, both upon principle and authority, that a purchaser at a sale made under a deed of trust, takes upon himself the risk of the regularity and fairness of the sale in a court of equity. And there is certainly nothing unreasonable in this : because the purchaser must necessarily have notice of the trust deed under which the sale is made ; and it is his duty to see that the terms of the deed are complied with ; because the deed furnishes the chart by which the *908 trustee is to be governed. It is -different in a court of law, because the trustee, being vested with the legal title, by his deed transfers the legal title to the'purchaser. *See Taylor v. King, 6 Munf. 358, and Harris v. Harris, Idem, 367. These were suits in a court of law. And Judge Roane, in delivering the opinion of the court in Taylor V. King, uses this language : “ While, however, the vendee gets a legal title by the mere execution of the deed, the original owner of the land, or his alienee, is not to be injured by a breach of trust on the part of the trustee ; a purchaser from him, the requisitions of the deed not being complied with, does not in equity get a complete title, because until then the trustee is not authorized to convey it.” And in the more recent case of Gibson’s heirs v. Jones, 5 Leigh, 370, which was a suit in equity, this precise question seems to have been adjudged, and President Tucker, in delivering the opinion of the court, says : “The bill charges the sale to'have been irregularly made, and without advertisement, by which a great sacrifice was produced. The answer does not allege that there was an advertisement. The defendant took it for granted that the proceedings were regular. It became him to prove that they were so. The proof lay upon him, for he had the affirmative of the issue as to this point. The plaintiff could not prove that there was no advertisement.” These decisions, in our own court, I regard as settling the law of this case.
Let us now see what are the facts in regard to the irregularity of the sale : Hirst, the bill charges, “that whether the sale was advertised, by the trustee, in the manner required by the deed of trust or not, he did not know.” This was a sufficient allegation to put the purchaser and trustee upon the proof that it had been duly advertised. It is true, in the answer of the purchaser, he says it was duly advertised. But this is not enough. It was an affirmative allegation, and he was bound to prove it. This he has wholly failed to do ; but, on the contrary, the witness Beckham, who resided in the immediate vicinity, and who was in a condition to buy, says he had not heard of the sale, and was there by '^accident. This, although not direct proof that the sale was not duly advertised, was certainly enough to put the purchaser and trustee upon the direct proof of the fact, if it existed, and especially as the burden of the proof lay upon them. But this is not the only objection. The deed executed by the trustee to Hill, the purchaser, contains this recital, “that he did offer for sale, on the 20th day of April, 1847, to the highest bidder, for cash, the tract of land, &c.” This recital is in the deed made by the trustee Cowherd to Thomas Hill, jr., the purchaser, and under which he claims title to the land, and is testimony against them. And this being the case, it would seem that the tract of land and the house and lot were not sold upon the terms prescribed in the deed, (which were one-half for cash, and the other half upon a credit of six months,) but wholly for cash.
These irregularities are, in themselves, sufficient to render the sale void in a court of equity, and was possibly the true reason of the reduced prices at which the property sold; for I think a careful examination of the testimony must satisfy any one, that the property was sold much below its real value. But, whether the inadequacy of the price was so gross, as of itself to justify the setting the sale aside, it is not necessary to determine ; but certainly, taken in connection with the irregularities before noticed, is quite sufficient for that purpose.
I am, therefore, of opinion, that the decree of the circuit court ought to be reversed.
The other judges concurred.
DECREE.
The court is of opinion, that the decree of the Circuit Superior Court of Law and Chancery for the county of Culpeper, pronounced on the 14th day of June, 1849, is erroneous. It is, therefore, decreed and ordered, that the same be reversed and annulled, and that the appellees, Thomas Hill, jr. and William A. Hill, do pay *unto the appellant his costs, by him expended, in the prosecution of his appeal aforesaid here. And this court proceeding to pronounce such decree as the said circuit superior court ought to have pronounced, it is further decreed and ordered, that the sale made by the trustee Coleby Cowherd, on the 20th April, 1847, under the trust-deed of the appellant, bearing date the 17th March, 1847, and the deed made by said Cowherd to the appellee Thomas Hill, jr. the purchaser, dated the 17th May, 1847, be and the same are hereby set aside, vacated and annulled. It is further adjudged, ordered and decreed, that the sale by the sheriff, at the December County Court of Culpeper, 1847, under the schedule rendered by the appellant, on taking the oath of an insolvent debtor, of his equity of redemption in the land sold by the said trustee, and purchased by Winfield S. Coons, for $20, according to the bill, and $20 50, according to the answer, and for the benefit of the appellee Thomas Hill, jr., as alleged in the bill, and substantially admitted in the answer, be and the same is hereby set aside, vacated and annulled. And the cause is remanded to the Circuit Court of Culpeper county for further proceedings to be had therein, in conformity to the opinion and decree of this court, with instructions to make an interlocutory order, referring the cause to a master commissioner in chancery, to take an .account of the debts secured by the three trust-deeds of the 24th September, 1846, the 26th October, 1846, and 17th March, 1847, in the 'proceedings 'mentioned, and their several and respective priorities, treating the appellee Thomas Hill, jr. as the owner or beneficiary of such of the said debts as he has paid out of the purchase-money, as alleged in his answer, as well as of those secured to him by said deeds, together with an account of all debts chargeable upon the land in virtue of judgment, ca. sa. or other liens, whether paramount or subordinate to the liens of the trust deeds — also an account *909 of the rents and profits of the land from the date of the appellee’s (Thomas Hill, jr.) purchase of *Cowherd, or of his acquiring: possession under said purchase— taking: care, in stating' the account of Thomas Hill, jr. of the debts and interest due him on the one hand, and of the rents and profits with which he is chargeable on the other, to allow him a credit for the §20 or §20 SO, and interest, the price payable or paid for the appellant’s equity of redemption as aforesaid ; and, upon the coming in and confirmation of the report of the commissioner, to direct the re-sale of the land, under the three deeds aforesaid, by a commissioner to be appointed by the court, in the form of the usual decree of foreclosure and sale, for cash, or, in the discretion of the court, upon terms of credit not exceeding 6, 12 and 18 months; and the proceeds of sale, in the event of a sale, by reason of the failure of the appellant to redeem, to distribute to and among the creditors, according to their several and respective rights, as ascertained by the report of the commissioner, and the residue, if any shall remain, to the appellant or his assigns ; and, upon the final decree, the circuit court will decree costs in favor of the appellant up to the "time of entering in that court the order of account, directed by the decree of this court, and as to the costs subsequently accruing, will decree them against the appellant, and in favor of the appellees. But this decree is to be without prejudice to the claims of the appellee Thomas Hill, jr. for an allowance, in the taking of the account of rents and profits, of a reasonable compensation for permanent improvements, if shewn to be proper in the opinion of the circuit court.