# Wytheville

SCHMIDT AND WILSON, INC., IN ITS OWN RIGHT, AND AS
ASSIGNEE v. J. D. CARNEAL, JR., TRUSTEE.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning
and Chinn, JJ.

The opinion states the case.

*George B. White,* for the plaintiff in error.

*Gordon B. Ambler,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

The Virginia Mutual Life Insurance Company owned certain property in Richmond, Virginia, on which it gave three deeds of trust.

The first deed, dated March 2, 1931, conveyed the property to Central Trust Company, trustee, to secure the payment of the principal sum of $6,500 evidenced by the notes of the owner, of even date with the said deed of trust, payable one year after date.

The second deed, also dated March 2, 1931, conveyed said property to J. D. Carneal, Jr., trustee, the defendant herein, to secure the payment of the principal sum of $1,000, evidenced by the notes of the owner, of even date with said deed of trust, payable one year after date. This deed of trust specifically provides that the lien thereby created is subordinate and inferior in dignity to the lien created by the deed of trust from said owner to Central Trust Company, trustee, to secure $6,500 as aforesaid. It also provided that in the event of sale thereunder the terms should be for only so much cash as would be necessary to defray the expenses of executing the trust, including a commission of five per centum to the trustee, and to discharge the amount due on the notes thereby secured.

The third deed of trust, dated June 5, 1931, conveyed said property to E. F. Schmidt, trustee, to secure the payment of certain other notes made by the said owner, held by the plaintiff herein.

Default having been made in the payment of the debt secured by the second deed of trust, the trustee therein, J. D. Carneal, Jr., after advertising said property, without the consent of the owner or the beneficiary under the third deed of trust, sold the whole property for the price of $8,900 cash. At the time of the sale the debt secured by the first deed of trust was also past due and unpaid, and the holder thereof was demanding payment. Out of the proceeds derived from the sale said trustee paid the costs and expenses attending the same, and retained out of said proceeds as his commissions five per centum of the said sum of $8,900, amounting to $445; then paid the full amount of

principal and interest due under the first deed of trust, amounting to $6,725.13, and the principal and interest due under the second deed of trust, amounting to $1,034.94; and the balance of said proceeds paid to the plaintiff, Schmidt and Wilson, on account of the notes secured under the third deed of trust. This balance was not sufficient to discharge the notes held by the plaintiff, and the owner of the property having assigned to the plaintiff all its rights in the fund, this suit was brought to recover the sum of $336.25, the same being five per centum on $6,725.13, the amount paid on the first deed of trust, which the plaintiff claims said trustee had no right to retain. The whole matter of law and fact being submitted to the court on an agreed statement of facts, the court entered judgment for the defendant, of which judgment plaintiff below complains.

The sole question in the case is whether or not the defendant, trustee in the second deed of trust, had the right to sell and convey the legal title to the property conveyed to him and charge a trustee's commission on the gross proceeds of such sale.

It is well settled that a trustee in a deed of trust can only do with the trust property what the deed either in express terms or by necessary implication authorizes him to do. In other words, the powers of the person foreclosing under a mortgage or deed of trust are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with incidental and implied powers that are necessarily included therein. Accordingly, the trustee or mortgagee must see that in all material matters he keeps within his powers, and must execute the trust in strict compliance therewith. *Wilson* v. *Wall*, 99 Va. 353, 38 S. E. 181; *Graeme* v. *Cullen*, 23 Gratt. 266; *George* v. *Zinn*, 57 W. Va. 15, 49 S. E. 904, 110 Am. St. Rep. 721; 19 R. C. L., page 592.

In Jones on Mortgages (7th Ed.) section 1853, it is said that the mortgagee or trustee cannot sell a greater interest than his mortgage or deed of trust gives him au-

thority to sell. He must sell subject to the incumbrances having precedence of his mortgage. He can sell under the power only what was conveyed to him, an equity of redemption.

In Perry on Trusts and Trustees (7th Ed.) section 602bb, it is said: "* * * A sale under such prior power cuts off all subsequent mortgages, attachments, judgments, and liens, even although the sale should be made to the mortgagor. But a sale under a junior power of sale mortgage conveys only the equity of redemption. It cuts off all liens, attachments and judgments subsequent to the power under which it was made but does not affect prior ones. * * *"

And in section 602ff, it is said: "* * * If the sale is made under a second deed of trust or mortgage, nothing is to be paid to the prior mortgagee, as such sale does not affect such prior lien, but it cuts off all subsequent mortgages, liens, judgments, or assignments; therefore, they are to be paid as before stated. * * *"

As already observed, the deed of trust under which the defendant was acting expressly provided that the same was subordinate to the first deed of trust of the same date to the Central Trust Company, trustee. Said deed of trust, therefore, conveyed only the grantor's equity of redemption in the property, and the trustee had no power or authority to sell any greater estate, nor, without the consent of the grantor and the third deed of trust creditor, to use the proceeds derived therefrom to pay off the first deed of trust notes.

In *Seward* v. *New York Life Ins. Co.*, 154 Va. 154, 152 S. E. 346, 349, Justice Epes said: "Where a tract of land is subject to a first and a second deed of trust and the equity of redemption therein is sold under the second deed of trust, in the absence of any directions to the contrary in the second deed of trust, the proceeds of sale are applicable (1) to the payment of the costs of sale, (2) to the payment in full of the debt secured by the second deed of trust, and (3) to the payment of any lien debts *subsequent*

in priority to the second deed of trust of which the trustees have knowledge or notice, and any residue of the purchase money is payable to the grantor. The trustees have no right, power, or authority, without the consent of the grantor and such subsequent lien creditors, if any, to apply any part thereof to the payment of the prior deed of trust debt, or to accept the assumption of the purchaser of the first lien deed of trust debt as a part payment of the purchase price for the equity of redemption."

Having no authority to sell anything more than the grantor's equity of redemption, it follows that the trustee is only entitled to commissions on the gross amount for which the equity of redemption sold, same being the difference between $8,900, the amount the whole property sold for, and $6,725.13, the amount paid by the trustee in the discharge of the first deed of trust.

Counsel for defendant in error relies on the case of *Guggenheimer & Co.* v. *Rogers*, 95 Va. 711, 29 S. E. 874. In that case the grantor in a deed of trust conveyed a number of horses to a trustee to secure creditors, retaining the possession, use and profits of said horses for one year, and providing for a sale on default after that time. A few days after the execution of this deed, owing to a crisis in the affairs of the grantor, he was compelled to execute several other deeds for the benefit of creditors. Among these, one conveyed to another person as trustee the same horses mentioned in the first deed of trust, to secure certain additional creditors named therein. This deed authorized the trustee to take possession of the horses at as early a date as possible, and provided for their maintenance until sold, and provided further that the expenses of the trustee in supporting the horses, the costs of sale, etc., including a commission of five per centum, should be first paid out of the proceeds of sale. The horses were sold under this deed, after due advertisement, but did not bring enough to pay the costs and the debts secured in the first deed of trust. It was held by this court that the trustee in the second deed of trust was charged with the duty of taking immediate possession of the prop-

erty; that prompt action on his part was necessary to prevent the horses from perishing with cold and hunger in the midst of a severe winter, and the trustee, therefore, did what would have been directed if he had applied to a court of equity for guidance.

It may be at once observed that the facts of that case bear no analogy to the case at bar, and it is in no sense an authority for the action of the trustee in this case. In that case there was a conflict between the provisions of the two deeds of trust, and circumstances had arisen which made it necessary for the trustee in the second deed of trust to act in order to preserve the trust property for the benefit of the first lien creditors, which circumstances presented a case which would have justified the trustee in seeking the aid and direction of a court of equity. Here, no such questions are involved, and the record discloses no ground upon which a court of equity could have intervened, nor that any necessity had arisen for seeking its direction.

Upon the whole case, we think the plaintiff is entitled to recover the sum of $336.25, same being five per centum of the sum of $6,725.13 paid by the trustee to the note-holder under the first deed of trust, and being the amount which he retained in excess of the commissions to which he was entitled under the deed of trust under which he acted.

*Reversed.*